VKK CORPORATION, et al., Plaintiffs,

v.

NATIONAL FOOTBALL LEAGUE, et al., and Touchdown Jacksonville, Inc., Defendants.

No. 94 Civ. 8335(MP).

United States District Court, S.D. New York.

June 22, 1999.

---

### DECISION

MILTON POLLACK, Senior District Judge.

The Defendant Touchdown Jacksonville, Inc. ("TDJ, Inc. hereafter") has moved for Summary Judgment on the claims alleged against it in the First Amended Complaint. TDJ, Inc. was added as a party defendant in the amended complaint served on April 21, 1998 in an ongoing case in this Court brought in 1994. In its Answer to that complaint filed on June 23, 1998, TDJ, Inc. pleaded that the defense of the Statute of Limitations, as well as plaintiff's undisputed agreement with the NFL made on May 23, 1991 to remain in New England for three years precluded any claim against TDJ, Inc. herein.

The Clayton Act's four-year limitation 15 U.S.C. § 15b applies because the cause of action accrued in the Spring of 1991, more than four years before the cause of action was first asserted by the amended complaint.

However, the plaintiffs contend that under Rule 15(c), the claims asserted against TDJ, Inc. must be allowed to "relate back" to 1994, the date of the filing of the original complaint against Jacksonville Jaguars Ltd. (previously known as Touchdown Jacksonville, Ltd.), which was sued within the Statute of Limitations period.

On the basis of the evidence and the reasonable inferences to be drawn from the only specific cognizable evidence and the applicable legal considerations, the Court finds that the amended complaint does not relate back to 1994, since the plaintiffs chose at that time to sue only the entity which had become a member of the NFL (Jacksonville Jaguars, Ltd.) as a "payback" for alleged participation in the alleged scheme of blocking the relocation to Jacksonville of the Patriots football team; in other words, the plaintiffs chose not to sue a non-member of the NFL who was not rewarded with a membership in NFL. The Court finds that this choice of defendant to sue was a strategic decision by the plaintiffs.

In November 1993 the NFL announced the award of an expansion franchise to the defendant, Touchdown Jacksonville, Ltd. That entity had changed its name to Jacksonville Jaguars, Ltd. in December 1993, about a year previous to institution of this suit and the name change was known by the plaintiffs and acknowledged in paragraph "4" of the complaint.

That complaint stated that:

"the NFL sold the right to own and operate an expansion team to TJL [previously identified as Touchdown Jacksonville, Ltd. ("TJL") ]—to be called the **Jacksonville Jaguars**—which will commence playing in the 1995 season. Upon information and belief, the sale to TJL was, among other things, a **payback** for TJL's agreement to terminate negotiations with plaintiffs about relocating the Patriots to Jacksonville." (Emphasis supplied).

This deliberate choice of the party to be sued is also set forth in the amended complaint at paragraph "5" reading:

"on or about November 30, 1993 the NFL awarded the right to own and operate an expansion team to TJ, Ltd.—to be called the Jacksonville Jaguars—which commenced playing in the 1995 season."

The 1993 change of name was announced in a Certificate of Amendment to the Certificate of Limited Partnership filed in accordance with the Florida Statutes, reading:

"1. The name of this partnership is TOUCHDOWN JACKSONVILLE, LTD.

\*\*\*

"3. On December 2, 1993, the Partnership changed its name to "Jacksonville Jaguars, Ltd." ... "The name of the Limited Partnership is: Jacksonville Jaguars, Ltd."

In their motion to add TDJ, Inc. as an additional defendant in 1997, Victor Kiam had averred that "the NFL defendants sold to the defendant Touchdown Jacksonville, Ltd. the right to operate an NFL team," and that they had only learned on January 13, 1997 from defendants' opposition to a document filed in the case, that the entity was

TDJ, Inc. which had made an agreement not to deal with Kiam on relocating the Patriots. The amended complaint asserted that this agreement violated the Sherman Act. Plainly however, Kiam and his personnel had known about the corporate entity six years earlier, but they elected to sue only the partnership entity in 1994 because it was the latter which had been awarded the expansion franchise by NFL. It was that award to the Jaguars partnership entity which Kiam was pursuing as "payback" for assisting to block Kiams relocation.

In his 1995 deposition, Victor Kiam had testified that in 1991 the Jacksonville "Group" had "formed a Corporation." Moreover, Sam Jankovich, Kiam's 1991 CEO, testified he had received documents in a meeting in April 1991 from corporate representatives one of which was titled as the "Role of Touchdown Jacksonville!, Inc." and in another of which there is contained a resolution enacted by the City of Jacksonville which refers to "Touchdown Jacksonville!, Inc.", as a private corporation. Self evidently when the 1994 complaint in this action was drawn, Jankovich and Kiam had known that the Corporation was the entity with which Kiam had their discussions in April 1991 but they also knew that the "payback" had been made to the partnership and they chose in the earlier complaint to pursue the "payback" obtained by "Jacksonville Jaguars, Ltd.".

Consequently, the representation to Judge Sprizzo to obtain leave to add the corporation to this lawsuit (as a nonmember of the NFL) 31 months after the original complaint had been filed and 25 months after the Statute of Limitations had barred claims against additional defendants and five months after Kiam contended that the corporation's very existence was first "known" by them—was simply not true and at any event was no excuse for omitting a claim against the Corporation in 1994, if there was any intention to also sue a non-member of the NFL on a relocation matter.

***TDJ, Inc. Did Not Know and as a Non-Member of NFL Had No Reason to Know That This Action Would Have Been Brought Against It***

■ In order for an amended complaint to relate back, the plaintiff has the burden of demonstrating that the newly named defendant knew or should have known that the failure to name it in the original complaint resulted from a mistake. *West v. City of New York,* 1992 WL 249966, at *4 (1992). *See also Giannini v. City of New York,* 700 F.Supp. 202, 205 (S.D.N.Y.1988) ("Plaintiff has made no showing that *these parties* had any basis to believe that they were intended to be sued and were not sued as a result of a mistake of identity.") (emphasis added). If the omission of the new defendant "could have reasonably been perceived as a result of a tactical decision, the court may properly conclude that the plaintiff made a deliberate choice not to name the defendant." *Id.* and cases cited therein.

■ Delay in adding a new defendant may be considered by the court not only in determining whether the movant was guilty of inexcusable neglect, but also in determining whether the new defendant should have known that the failure to name it in the original complaint resulted from a mistake. *Unicure, Inc. v. Thurman,* 97 F.R.D. 1, 6 (W.D.N.Y.1982); *Campbell v. Ward,* 792 F.Supp. 1150, 1152 (E.D.Mo.1992) (delay of "several months" after learning of new defendant's alleged role in suit belied contention failure to name new defendant in original complaint was mere mistake).

■ In this case, plaintiffs named as defendants only those who were owners of NFL teams, including Jacksonville Jaguars, Ltd. (under its former name). They had specifically identified Jacksonville Jaguars, Ltd. (then known as Touchdown Jacksonville, Ltd.) as the successful recipient of an expansion franchise in paragraphs 4 and 61 of the original complaint. Akin to TDJ, Inc., plaintiffs also identified—but did **not** name as defendants—the unsuccessful non-member (of NFL) prospective ownership groups in Baltimore, San Antonio and Memphis with whom plaintiffs conducted fruitless relocation discussions in 1991 and 1992. TDJ, Inc. was in the same category as these other unsuccessful prospective ownership groups. It was not in the same category as the defen-

dants in the original complaint, the NFL and its member teams. Anyone reading the complaint would note that no unsuccessful prospective ownership groups were sued and conclude that TDJ, Inc. was not sued because it too was an unsuccessful prospective ownership group.

This conclusion is reinforced by the plaintiffs' delay in amending the original complaint to include TDJ, Inc. Plaintiffs delayed more than 2 1/2 years after filing their original complaint and five months after they misrepresented to Judge Sprizzo that they first knew of the existence of TDJ, Inc. in 1997 before moving to amend their complaint. During that entire period, TDJ, Inc. did not know or believe and had no reason to know or believe that plaintiffs' decision not to name it in 1994 as a defendant was anything other than a tactical decision—just like the similar decision plaintiffs made with respect to the unsuccessful groups in Baltimore, San Antonio and Memphis.

This suit was against NFL members pertaining to a questioned relocation of franchises. The corporation attempted to be added as a party defendant in 1998 was not at any time a member of the NFL which had promulgated and asserted the questioned relocation rules. This is not a case of substituting an incorrectly named defendant by one to have been named. The complaint was directed against relocation rules and the member of the NFL, viz. Jacksonville Jaguars, Ltd. which had acquired membership in NFL through an expansion franchise from the NFL. The complaint was keyed to the relocation rules and that imported the recipient of the so-called "payback" to block relocation. Had the proper name been used in the complaint for the entity which obtained a franchise from NFL, the seeming identity of the limited partnership and the corporation would have been avoided.

Wholly apart from the above, Kiam had the benefit of complete discovery regarding the substantive antitrust allegations against TDJ, Inc., and failed and is unable to point to any specific provable material facts evidencing the claimed express conspiratorial agreement between TDJ, Inc. and the NFL. Significantly, in plaintiff's opposition to the TDJ,

Inc. summary judgment motion dated May 12, 1999, plaintiffs acknowledge their failure to present "sufficient evidence of concerted action between TDJ, Inc. and the NFL by promising that the additional evidence *that plaintiffs will present* at the upcoming Rule 43(e) hearing abundantly supports a jury finding of concerted action."

As we know now, no witnesses or additional evidence were produced at the Rule 43(e) hearing, albeit depositions had been taken by the plaintiffs in preparation for the hearing. There is no sufficient evidentiary support of any concerted conspiratorial action on the part of TDJ, Inc. with the NFL. There is no substantial specific evidence or reasonable inferences to be drawn from evidence of an alleged conspiracy on the part of TDJ, Inc. No competing permissible proofs or inferences remain to be passed upon by a fact finder.

Plaintiffs make a weak attempt at suggesting they did not have discovery that it needed to piece out its claim against a non-member of NFL. The fact is however that over defendants' objections, plaintiffs were permitted to take discovery and to introduce evidence at the Release trial regarding their efforts to negotiate to relocate to Jacksonville. Plaintiffs utilized the full right to take discovery of TDJ, Inc., the NFL defendants and third parties with respect to the relocation discussions between TDJ, Inc. and plaintiffs and with respect to related discussions between TDJ, Inc. and the NFL defendants. As a result, plaintiffs received from TDJ, Inc. documents relating to such discussions and had deposed the following individuals:

(i) Neil Austrian (NFL President regarding discussions between TDJ, Inc. and the plaintiffs and TDJ, Inc. and the NFL)

(ii) Herbert Belgrad (Maryland Stadium Authority President regarding discussions between TDJ, Inc. and plaintiffs and TDJ, Inc. and the NFL)

(iii) Hamilton Jordan ("Jordan," TDJ, Inc.'s former stockholder regarding discussions between TDJ, Inc. and plaintiffs)

(iv) Jay Moyer (NFL general counsel regarding discussions between TDJ, Inc. and plaintiffs and TDJ, Inc. and the NFL)

(v) Thomas J. Petway, III (Chairman of TDJ, Inc. and former controlling stockholder of the general partner of TDJ, Ltd. regarding discussions between TDJ, Inc. and plaintiffs and TDJ, Inc. and the NFL)

(vi) Charles Rice (Barnett Bank Chairman regarding discussions between TDJ, Inc. and plaintiffs)

(vii) David Seldin (regarding discussions between TDJ, Inc. and plaintiffs, Jacksonville Jaguars Ltd. and plaintiffs, and TDJ, Inc. and/or TDJ, Ltd. and the NFL in 1991 and 1992, and also including the relationship between TDJ, Inc. and Jacksonville Jaguars, Ltd.)

(viii) Timothy Smith ("Smith," TDJ, Inc.'s former consultant regarding discussions between TDJ, Inc. and plaintiffs)

(ix) Paul Tagliabue (NFL Commissioner regarding discussions between TDJ, Inc. and plaintiffs and TDJ, Inc. and the NFL)

(x) Don Weiss (former NFL executive regarding discussions between TDJ, Inc. and plaintiffs and TDJ, Inc. and the NFL)

In addition, plaintiffs presented evidence over defendants' objection during the seven-day Release trial in support of their claims that an alleged agreement between TDJ, Inc. and the NFL led to TDJ, Inc.'s cessation of its discussions with plaintiffs; which led to plaintiffs' economic duress; which in turn led to Kiam's purported involuntary execution of the General Release on May 8, 1992, which allegedly rendered the release unenforceable.

Notwithstanding the foregoing, plaintiffs neither presented nor proffered any cognizable evidence of any alleged improper agreement between TDJ, Inc. and the NFL. The deposition testimony of Petway, Seldin, Jordan and Smith and the Petway and Seldin affidavits confirm that there was never any such agreement.

Plaintiffs had the full opportunity during the lengthy pendency of the case to take all discovery they deemed necessary and/or appropriate to prove their alleged agreement which *plaintiffs* contended was relevant to their economic duress claim. Nevertheless, plaintiffs failed to introduce at the Release trial and cannot identify even now any specific evidence sufficient to create a *genuine* issue of material fact with respect to the existence of an alleged conspiratorial agreement which is the basis for all of their claims against TDJ, Inc.

The claim against Touchdown Jacksonville, Inc. was specifically repudiated by an affidavit of Thomas F. Petway as quoted hereinafter which is not answered by Kiam:

"At all times since January 1, 1991, I have been the Chairman and 51% voting control stockholder of Touchdown Jacksonville, Inc., a Florida corporation" ("TDJ, Inc.").

***

I have specifically reviewed the allegations in paragraphs 4, 60 and 61 of the original complaint. The allegations in paragraphs 60 and 61 that TDJ, Ltd. (the Jacksonville Jaguars, Ltd.) made a purported agreement with the NFL in April 1991 are false because TDJ, Ltd. did not exist in April 1991.

I have no knowledge of and did not ever authorize or approve *any* agreement between TDJ, Inc. and the NFL or any of its teams much less an agreement of the kind alleged in the amended complaint.

Accordingly, the Court finds from the evidence, the record and the reasonable inferences to be drawn therefrom that the plaintiffs had made a deliberate informed choice of the entity it wished to sue, namely, the partnership, Jacksonville Jaguars, Ltd. which obtained an NFL franchise and was governed by the NFL relocation rules under attack. The contention of "mistake" in the naming process was a false facade.

Motion for Summary Judgment dismissing the corporation, Touchdown Jacksonville,

Inc. on the bar of the Statute of Limitation is granted.

So Ordered.